**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Robert JACOBS, Defendant-Appellee.**

**No. 75–1777.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1976.

Decided Oct. 12, 1976.

Rehearing and Rehearing En Banc Denied Feb. 2, 1977.

---

Samuel K. Skinner, U. S. Atty., Thomas Johnson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Richard G. Schultz, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge, and EAST, Senior District Judge.*

FAIRCHILD, Chief Judge.

The Government appeals from an order of the district court dismissing a perjury indictment against defendant Robert Jacobs. We must decide whether *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), which held the Hobbs Act, 18 U.S.C. § 1951, inapplicable to use of force in achieving legitimate labor ends, also protects Jacobs, a union employee, from prosecution for perjury before a grand jury which was investigating possible Hobbs Act violations.

* Senior District Judge William G. East of the United States District Court for the District of Oregon is sitting by designation.

On May 15, 1975 the May 1975 Grand Jury returned a one-count indictment against Jacobs charging him with violation of 18 U.S.C. § 1623 (making false declarations before a grand jury). The indictment alleged that Jacobs had falsely declared that he had never carried or brandished a gun in the course of his union organizing activities. The indictment read, in part:

"The May 1975 Grand Jury charges:

1. On September 19, 1973, at Chicago, in the Northern District of Illinois, Eastern Division, the September 1973 Grand Jury was sitting as a duly impaneled and sworn grand jury of the United States.

2. At the time and place aforesaid, the September 1973 Grand Jury was conducting an investigation and receiving testimony from witnesses pertaining to possible violations of Title 18, United States Code, Section 1951, and other federal criminal statutes.

3. It was a matter material to said investigation that the grand jury should know and should be informed of the methods by which representatives and agents of the Truck Drivers, Oil Drivers, Filling Station and Platform Workers Union, Local No. 705, sought to obtain recognition by gasoline and service station dealers of Local 705 as the exclusive bargaining representative of their employees.

4. From in or about the Spring of 1963 through October 1968, Robert Jacobs was employed as an agent of Local 705 whose duties and responsibilities included, among others, organizing gasoline and service station employees and obtaining recognition of Local 705 as a bargaining representative by gasoline and service station dealers."

Succeeding paragraphs set out defendant's denials that he had carried or brandished a gun in the course of his activities, and the falsity of those denials.

The district court on June 23, 1975 dismissed the indictment on the grounds that the indictment on its face showed that the grand jury was investigating conduct that was unindictable under *Enmons, supra,* and that to survive *Enmons* the indictment would have to allege some reason to question the legitimacy of the union activities being investigated.

On appeal, the parties failed to agree on the precise issue of the case. Counsel for Jacobs, conceding *arguendo* the false declarations, contends that the issue is one of materiality. He argues that Jacobs' false declarations before the September 1973 Grand Jury were in response to questions which were not material to the grand jury's investigation and therefore they were not proscribed by 18 U.S.C. § 1623. The Government, on the other hand, contends that the questions and false declarations were clearly material to the investigation, and frames the issue as whether the indictment shows on its face that the inquiry being conducted was unauthorized. False declarations made before a grand jury material only to an investigation beyond its jurisdiction or authority do not constitute perjury. *Brown v. United States,* 245 F.2d 549, 552 (8th Cir. 1957).

We agree with the Government's analysis of the issue, remembering, of course, that we are presently testing the sufficiency of an indictment. The indictment alleges that Jacobs' false declarations were material, and it seems clear that whether Jacobs brandished a gun while calling on service stations in the process of organizing employees and seeking recognition seems clearly material to the alleged purpose of the investigation—the methods by which recognition was sought. The real question is whether the alleged purpose was wholly beyond the grand jury's authority. Can it be said, from the face of the pleading, either that the grand jury was looking only for conduct which, under *Enmons,* was not a federal offense, or that no conduct which might be found in an investigation so described could be indictable after *Enmons?*

In *Enmons,* employees of a utilities company were charged with conspiring to obstruct commerce during a strike: firing rifles at three company transformers, draining the oil from a transformer, and blowing up a transformer substation. The Supreme

Court held that an indictment under the Hobbs Act must be dismissed, because "the Act does not apply to the use of force to achieve legitimate labor ends." *Enmons, supra,* 410 U.S. at 401, 93 S.Ct. at 1010. Such acts of violence are left to state court prosecution.

In view of the fact that organizing and seeking recognition seem clearly legitimate union ends, appellant urges us, in effect, to find that his false declarations were material only to a grand jury investigation which could not have resulted in an indictment.

*Enmons* itself teaches, however, that some activity, even in a labor context, can violate the Hobbs Act:

> . . . [T]he Hobbs Act has properly been held to reach instances where union officials threatened force or violence against an employer in order to obtain personal payoffs, and where unions used the proscribed means to exact 'wage' payments from employers in return for 'imposed, unwanted, superfluous and fictitious services' of workers. *Enmons, supra,* 410 U.S. at 400, 93 S.Ct. at 1010. (Footnotes omitted.)

In other words, violence joined with illegitimate objectives may result in a Hobbs Act violation.

A recent Fifth Circuit case illustrates the point. In *United States v. Quinn,* 514 F.2d 1250 (5th Cir. 1975), a clergyman who was authorized to represent certain employees in a labor dispute was convicted of a Hobbs Act violation for receiving payments from an employer in return for calling off a picket line. The Fifth Circuit affirmed the conviction, even though conceding as to one count of the indictment that:

> 1. A bona fide labor dispute existed between American Discount and its employees;
> 2. The attainment of higher pay was, on the part of the employees, a legitimate labor objective;
> 3. The employees got the higher wages;
> 4. Reverend Quinn was authorized by the American Discount employees to rep-

resent them and to act as their spokesman.

> \* \* \* \* \* \*

*Quinn, supra,* 514 F.2d at 1259.

Further complicating the case as to the count of the indictment just mentioned was that the $300.00 received from the employer by the defendant was used entirely to defray expenses incurred in the picketing, $180.00 for premiums on bail bond and $120.00 for attorney fees. *Id.* at 1258.

■ Returning to the case before us, the alleged purpose of the investigation, *i. e.,* into methods of seeking recognition, is broad enough to encompass conduct outside the pursuit of legitimate labor ends. Presumably a demand for recognition, on behalf of a union authorized to represent the majority of employees albeit at gunpoint, cannot, under *Enmons* violate the Hobbs Act. We think the same demand on behalf of a union which does not have authority to represent any of them could violate it. Extortion of personal payoffs or other illegitimate benefits would not be protected by *Enmons.* We differ, again, from the district court, and deem it unnecessary that the instant perjury indictment must spell out some cause to question the propriety as labor objectives of the purposes being pursued by defendant. If the alleged purpose of the investigation is broad enough to cover both unindictable and indictable conduct, we see no policy reason for construing it to mean only the former. The mere possibility that the grand jury would not find conduct indictable in the light of *Enmons* would not deprive it of authority to investigate to see whether indictable offenses had been committed.

The judgment dismissing the indictment is reversed, and the cause is remanded for proceedings consistent with this opinion.

REVERSED.

HASTINGS, Senior Circuit Judge (dissenting).

In my judgment, the majority errs in framing the issue before us on this appeal,

**22**

viz.: "whether the alleged purpose [of the grand jury investigation] was wholly beyond the grand jury's authority." Rather, I suggest that the district court[1] was correct in contending that the issue is one of *materiality*. This is to say, conceding that Jacobs made false declarations before the grand jury, that they were in response to questions which were not material to the grand jury's investigation and therefore were not proscribed by 18 U.S.C. § 1623.

The key issue, of course, is the interpretation of *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), in which a divided Court held that the Hobbs Act, 18 U.S.C. § 1951, which makes it a federal crime to obstruct interstate commerce by robbery or extortion, does not reach the use of violence (which is readily punishable under state law) to achieve legitimate union objectives, such as higher wages in return for genuine services that the employer seeks. *Id.* 399–411, 93 S.Ct. 1007.

Judge McLaren reasoned that the *methods* employed by Local 705 Union were immaterial to a Hobbs Act violation, if the end was legitimate. He further found that the end sought by the union, to become the exclusive bargaining representative of the employees of the subject filling station, was legitimate. From this he concluded that the testimony of Jacobs, the labor union's authorized organizer, concerning the *means* employed to accomplish that end could not have been material to a Hobbs Act violation. The court filed a memorandum opinion and order on the same date.

If the reach of *Enmons* is to be further extended, as urged by the majority, I would leave that to the United States Supreme Court in an appropriate case. Indeed, in *Enmons*, quoting from *United States v. Bass*, 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971), the Court said: "[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance.

Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States. . . . [W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction." 410 U.S. at 411–412, 92 S.Ct. at 523.

Based upon the foregoing, together with the well-considered memorandum opinion of Judge McLaren, I would affirm the judgment of the district court.

---

1. United States District Court for the Northern District of Illinois, Eastern Division, the late Honorable Richard W. McLaren, presiding.