HAYS, Justice.
Petitioner Emil Franzi is under indictment for six counts of perjury, A.R.S. § 13-2702(A), and six counts of false swearing, A.R.S. § 13-2703(A), based on his testimony before a grand jury in Pima County. We have jurisdiction pursuant to the Rules of Procedure for Special Actions, rule 8.
In August of 1982, the 51st grand jury for Pima County began an investigation into a contract awarded by the Pima County Board of Supervisors to an Arizona company. The investigation number was 51 G.J. 43. That investigation led to an investigation into the ultimately unsuccessful congressional campaign of one of the members of the Board of Supervisors. The second investigation number was 51 G.J. 263.
Franzi was granted immunity to testify during the latter investigation as to any violation of substantive campaign law. After being duly sworn, but before testifying, Franzi was told that false statements would result in prosecution for perjury or *559 false swearing. He indicated he understood his obligation to testify truthfully.
After this indictment, which is the only indictment to be returned by the 51st grand jury, Franzi filed motions to dismiss on various grounds, all of which the trial court denied. Franzi also filed a motion for discovery which was granted in part and denied in part. Franzi filed a special action in the court pf appeals raising all the issues that had been decided adversely to his position. The court of appeals denied jurisdiction except to grant Franzi relief on his discovery motion. Franzi filed a petition for review in this court contesting the remaining issues on which he had been denied relief. The state filed a petition for review stating that the ruling of the court of appeals on the discovery issue was erroneous. We accepted jurisdiction on both petitions for review. The proceedings below were stayed pending the resolution of this matter. Additional facts will be discussed as necessary.
JURISDICTION
Franzi argues that the indictment against him ought to be dismissed because the Pima County Grand Jury does not have jurisdiction to investigate a congressional campaign. He states that a county grand jury cannot indict for federal crimes and this grand jury’s investigation is therefore void. The resolution of this claim requires us to determine the scope of the grand jury’s power to investigate. If the instant investigation exceeded that power, we must determine if this is a defense to the present charges.
The question presented is whether the investigative powers of the county grand jury exceed its power to indict. A.R.S. § 21-407(A) provides in pertinent part: “The grand jurors shall inquire into every offense which may be tried within the county ____” In Marston’s Inc. v. Strand, 114 Ariz. 260, 560 P.2d 778 (1977), we discussed the function and powers of the grand jury. We said that the grand jury is an independent investigative body designed to bring to trial those who may be guilty and free the innocent from suspicion. Id. at 264, 560 P.2d at 782. To fulfill that function the grand jury has the right to every person’s evidence, absent a constitutional, common law, or statutory privilege. Id. And a witness before the grand jury cannot set limits to the grand jury’s investigation; furthermore, to fulfill its task of returning only well-founded indictments, the grand jury’s power to investigate is necessarily broad. Id. at 264-65, 560 P.2d 782-83.
In Marston’s, supra, we did not reach the precise issue presented today; however, the courts that have addressed this issue have resolved the issue in favor of the grand jury’s right to investigate beyond its authority to indict. In Samish v. Superior Court, 28 Cal.App.2d 685, 83 P.2d 305, 306 (1938), the California Court of Appeals said:
One of the chief purposes of a grand jury is to investigate and ascertain whether crimes have been committed within the borders of its county and to institute criminal prosecutions thereof. A grand jury is not deprived of jurisdiction to investigate asserted public offenses merely because its members are uncertain as to whether a crime was actually committed, whether it was really committed within the borders of the county, or because of a lack of identity of the particular individual who perpetrated the crime. If it should develop after a thorough investigation by a grand jury that the alleged crime was really committed in another county that does not render the proceedings invalid or void, but merely precludes the presenting of an indictment therefor in that county.
And in United States v. McInnis, 601 F.2d 1319, 1327 (5th Cir.1979), cert. denied, 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980), the Fifth Circuit said:
A grand jury might, following an investigation, decide that a federal offense had likely been committed but refuse to return an indictment; it might decide that the conduct investigated was a state, but not a federal crime, or that the actions *560 were not criminal. Unless the grand jury has such latitude, there is little reason for its existence, and it would be incapable of protecting citizens by exercise of its independent judgment, (citation omitted)
See also United States v. Jacobs, 543 F.2d 18, 21 (7th Cir.1976), cert. denied, 431 U.S. 929, 97 S.Ct. 2632, 53 L.Ed.2d 244 (1977) (grand jury may investigate even though result may be that no indictable offenses had been committed); United States v. Doulin, 538 F.2d 466, 470 (2d Cir.), cert. denied, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976) (assuming grand jury had no authority to indict defendant for substantive crime out of which his perjury conviction stemmed, it would be, if true, irrelevant, as the grand jury’s responsibility to investigate is not coterminous with its power to indict); United States v. Cuevas, 510 F.2d 848, 852 (2d Cir.1975) (E.D.N.Y. federal grand jury can investigate criminal activity in S.D.N.Y. as the information could lead to prosecution of offenses in E.D.N.Y.); Brown v. United States, 245 F.2d 549, 554 (8th Cir.1957) (“broad investigatory powers of a grand jury ... extend ... to an inquiry into facts that occurred in another district provided that such inquiry has to do with relevant matters.”).
We agree with these courts that the grand jury’s power to investigate may exceed its authority to indict. The grand jury’s power to investigate events that occurred within the jurisdictional boundaries of another political entity exists only to the extent that the lead or tip being investigated is reasonably calculated to result in information concerning indictable criminal activity.
The next question, therefore, would seem to be whether the grand jury was acting within its jurisdiction while investigating the congressional campaign. However, Franzi did answer the questions and allegedly answered them falsely. What effect do his alleged false statements have, if any, on his claim that the grand jury’s lack of jurisdiction to investigate is a defense to the charges against him? In United
States v. Mandujano, 425 U.S. 564, 576-77, 96 S.Ct. 1768, 1776, 48 L.Ed.2d 212 (1976), the United States Supreme Court said that in our
constitutional process of securing a witness’ testimony, perjury simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings—
... [0]ur cases have consistently — indeed without exception — allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry. See, e.g., United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969); Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938); United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205 (1937).
In Bryson, supra, the Court said:
[I]t cannot be thought that as a general principle of law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government’s right to ask questions — lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and wilfully answer with a falsehood.
396 U.S. at 72, 90 S.Ct. at 360 (footnote omitted).
*561 Although the state need not prove materiality for the crime of false swearing, A.R.S. § 13-2703(A), and, therefore, need not prove the propriety of its inquiry, we hold that a defendant charged with the crime of false swearing may not raise at trial the defense of lack of jurisdiction on the part of the grand jury. Our system provides another method to test the power of the grand jury.
*560 In the context of a county grand jury, we hold that lack of jurisdiction on the part of the grand jury to make an inquiry may not be raised as a defense if the response to the objectionable question is allegedly false. See generally Model Penal Code and Commentaries, Part II, § 241.1, at 128-29 (1980). We note that to prove the crime of perjury, the state is required to prove the materiality of the *561 statement. A.R.S. § 13-2702(A). If the state proves the statement was material (see infra section entitled “Materiality”), the state will also have proved that the grand jury was within its authority to ask the question. Thus, the issue of jurisdiction will be litigated as one aspect of materiality.
The method provided is to challenge the propriety of the grand jury’s question before the response is given. Whenever a witness before a grand jury believes the question asked is not within the jurisdiction of the grand jury to ask, the witness has, we hold, the right to consult with counsel. If the witness still believes the question is improper, the witness should refuse to answer. The grand jury must then decide if the answer is sufficiently important to warrant the commencement of a contempt hearing in superior court. At the contempt hearing, the superior court must be mindful of both the legitimate right of citizens to be free from abusive government proceedings, see Marston’s, supra, 114 Ariz. at 265, 560 P.2d at 783, and the “constitutional purpose of the grand jury.” Id.
We think that the forum of a contempt hearing satisfactorily balances the competing interests involved. The nature of the hearing will prevent witnesses from interposing frivolous objections, and the superi- or court has the power to prevent fishing expeditions. See id.; Ealy v. Littlejohn, 569 F.2d 219 (5th Cir.1978). We find that the trial court did not abuse its discretion when it denied the motion to dismiss on this ground. See State v. Superior Court, 132 Ariz. 479, 647 P.2d 177 (1982).
MATERIALITY
Franzi argues that the indictment should be quashed because his statements, even if untrue, were not material to the grand jury's investigation. He states the grand jury could not indict for federal crimes; therefore, any perjury on his part could not have hindered the grand jury’s investigation into indictable offenses. The state argues that Franzi’s false statements could have hindered the grand jury’s investigation by causing the wrongful indictment of innocent individuals or nonindictment of those who should have been indicted.
Materiality is defined as “that which could have affected the course or outcome of any proceeding or transaction.” A.R.S. § 13-2701(1). If Franzi’s statements were not material to offenses within the grand jury’s authority to indict, his statements, as a matter of law, would not constitute perjury. See United States v. Jacobs, 543 F.2d 18, 20 (7th Cir.1976); Brown v. United States, 245 F.2d 549, 552 (8th Cir.1957). Materiality is an element of the offense and the burden is on the state to prove materiality. See State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964) (construing former statute).
In United States v. Stone, 429 F.2d 138, 140-41 (2d Cir.1970), the court said:
[Mjateriality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue in civil or criminal litigation, since the purpose of the investigation is to get at facts which will enable the grand jury to determine whether formal charges should be made against someone rather than prove matters directly at issue, (citation omitted) Leads to further inquiry may be of material worth to an investigation. Thus the test of materiality is whether the false testimony has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation. (citations omitted)
A grand jury’s investigation is not fully carried out until every available clue *562 has been run down and all witnesses examined in every proper way to find if a crime has been committed; its investigation proceeds step-by-step and a false statement by a witness, such as Stone, in any step, even though not relevant in an essential sense to the ultimate issues pending before the grand jury, may be material in that it tends to influence or impede the course of the investigation, (citations omitted) Materiality must only be established as of the time the witness answers were given since materiality refers merely to the relationship between the interrogation and the grand jury’s objective at the time.
It is not necessary to prove the investigation was actually impeded. United States v. Abrams, 568 F.2d 411, 421 (5th Cir.), cert. denied, 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).
Whether a statement is material is a question of law. A.R.S. § 13-2701(1). But how is the decision on materiality to be made? The trial court could “embody its finding on materiality in an instruction to the jury.” United States v. Damato, 554 F.2d 1371, 1373 (5th Cir.1977) (footnote omitted). We think this method would run afoul of Ariz. Const. art. 6, § 27 (“Judges shall not charge juries with respect to matters of fact ____”), as construed by this court in State v. Godsoe, 107 Ariz. 367, 370, 489 P.2d 4, 7 (1971) (“A judge comments on the evidence when he expresses to the jury his opinion of what the evidence shows or does not show, [citation omitted] The inferences derived from the evidence are peculiarly within the jury’s province.”).
We think the procedure that best harmonizes Ariz. Const, art. 6, § 27 and A.R.S. § 13-2701(1) is for the trial court to make the initial determination on materiality. If the trial court finds that the statement is material, the case may be submitted to the jury, which can make an independent determination on materiality. If the trial court cannot find that the statement is material, the perjury charge will be dismissed.
As an appellate court, with the present state of the proceeding and the record, we cannot make a determination on materiality. This case must, therefore, be remanded. We address Franzi’s remaining arguments because a finding that the statements are not material may not hinder prosecution of the false-swearing charge.
CONSTITUTIONALITY OF THE- PERJURY AND FALSE SWEARING STATUTES

Vagueness

Franzi claims that the penury statute, A.R.S. § 13-2702(A), and the false swearing statute, A.R.S. § 13-2703(A), are vague and therefore violate the fifth and fourteenth amendments. As we discuss below, Franzi does not have standing to raise this issue, but even a cursory review shows that the statutes are not vague as to Franzi’s actions.
Fair warning that one’s actions are punishable is required. See Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). Franzi was duly sworn and told before testifying that false statements could result in his prosecution on charges of perjury and false swearing. Assuming arguendo that the statutes may not give all men reasonable notice, Franzi did have adequate notice that false statements would be punishable under the perjury and false swearing statutes. See id. at 756, 94 S.Ct. at 2562 (“[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.”).
In any event we do not think the statutes are vague. A.R.S. § 13-2702(A) provides: “A person commits perjury by making a false sworn statement in regard to a material issue, believing it to be false,” and A.R.S. § 13-2703(A) provides: “A person commits false swearing by making a false sworn statement, believing it to be false.” We think the statutes give a person of ordinary intelligence a reasonable opportunity to know that false statements are proscribed when one is under oath.

*563
Overbreadth

Franzi also raises overbreadth arguments. He claims that the definition of “statement” for purposes of the perjury and false swearing statutes are overbroad. He further claims that the perjury and false swearing statutes are overbroad. He has standing to raise these issues as the overbreadth doctrine allows the invalidation of laws on first amendment grounds even though the individual challenging the law has engaged in no constitutionally protected activity. See Central Hudson Gas & Electric Corp. v. Public Service Comm., 447 U.S. 557, 565 n. 8, 100 S.Ct. 2343, 2351 n. 8, 65 L.Ed.2d 341 (1980). “The over-breadth doctrine derives from the recognition that unconstitutional restriction of expression may deter protected speech by parties not before the court and thereby escape judicial review.” Id. The over-breadth doctrine is an exception to the rule that a litigant may not challenge a statute on the grounds it may be unconstitutional as applied to a third party. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
Franzi challenges, as overbroad, A.R.S. § 13-2701(2) which provides:
“Statement” means any representation of fact and includes a representation of opinion, belief or other state of mind where the representation clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation.
We think the statute adequately defines which statements are actionable. A.R.S. § 13-2701(2) is substantially similar to Model Penal Code § 241.0(2), and the commentary to the Model Penal Code is therefore instructive. The commentators indicate that one may be guilty of a misrepresentation of fact and also misrepresentation of opinion. When a representation of opinion, belief or other state of mind is at issue, the Model Penal Code limits the
scope of the term “statement” to include the representation of one’s opinion, belief, or other state of mind only where state of mind is explicitly the subject of an inquiry. The misrepresentation will justify a perjury prosecution only if it “clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation.” A perjury prosecution thus cannot be based upon an attempt to disprove the implicit assertion of good faith in making representations of fact. The questioner must be specific if the defendant’s belief or state of mind on the matter is deemed important and the defendant’s answer is to be taken as a representation in that respect.
Model Penal Code and Commentaries, part II, § 241.1, at 107 (1980) (footnotes omitted). Thus, the questions asked must be specific when opinion, belief or state of mind is the object of the inquiry.
The definition of the term “statement” does not, it is true, prohibit the questioner from asking improper questions; for example, as Franzi alleges, on its face A.R.S. § 13-2701(2) does not prevent gratuitous inquiries directed to ascertaining the witness’ religious belief. But the witness is protected from inappropriate inquiries by the procedure discussed above. See Model Penal Code and Commentaries, supra, at 99 (specific instances must be monitored by the courts because the legislature is unable to specify the definition of “statement” with greater precision). Therefore, although A.R.S. § 13-2701(2) does not limit the subject matter into which the inquiry may be directed, the grand jury is not at liberty to abuse its power. We find that the definition of statement contained in A.R.S. § 13-2701(2), as limited by the power of the superior court to protect witnesses, passes constitutional muster.
Franzi next claims that the perjury statute, A.R.S. § 13-2702(A) is overbroad. (See supra subheading “Vagueness,” for text of statute.) Franzi states that the oath given under this statute is not necessarily required or authorized by law to be given. Therefore, Franzi fears, “a self-styled detective, a credit-rating bureau, or the Ku Klux Klan” could administer an oath and a false statement before that *564 body could result in the witness’s being prosecuted for perjury. We disagree with his assumption and the conclusion he reaches based on that assumption.
The function of the perjury statute is to protect the administration of government from the debilitating effects of false testimony. See Model Penal Code, art. 208 “Offenses Against Government,” comment, at 100 (Tent. Draft No. 6, 1957). The Arizona Criminal Code Commission, which drafted the substance of A.R.S. § 13-2702(A),[1] recognized that perjury could be committed only during the course of an official proceeding. The Commission said:
The official proceeding requirement for perjury was deleted because the requirement of an oath covers any situation [formerly] covered by A.R.S. § 13-561[2] (trial, hearing, investigation, deposition, certification or declaration).
Arizona Criminal Code Commission, Arizona Revised Criminal Code, art. 27 “Perjury and Related Offenses,” at 250 (1975).
Thus, the oath requirement of A.R.S. title 13, chapter 27 indicates the proceeding in which the sworn testimony is taken is an “official proceeding.” The latter term is defined in A.R.S. § 13-2801(2) as follows: “ ‘Official proceeding’ means a proceeding heard before any legislative, judicial, administrative or other governmental agency or official authorized to hear evidence under oath.”
Therefore, there are several delimiting factors that must be met before an alleged false statement will support a perjury conviction. First, the proceedings in which the statements are made must constitute an official proceeding as defined above. (The grand jury qualifies because the foreman is authorized to administer an oath. See A.R.S. § 21-410(A).) Second, the statement must be made while under oath. Third, the statement must be false. Fourth, the speaker must believe the statement is false. Last, the statement must be material. We think that these delimitations ensure that the statute regulates no constitutionally protected speech. As we interpret the statute, only a narrowly defined subset of people is at risk. Only an individual under oath in the course of an official proceeding who makes a false statement that the individual believes to be false, and which is material to the investigation, is at risk.
Franzi also argues that the false swearing statute, A.R.S. § 13-2703(A) is overbroad. {See supra subheading “Vagueness,” for text of statute.) The Arizona Criminal Code Commission has said that false swearing “is identical [to perjury] except that it deletes the requirement of materiality.” Arizona Criminal Code Commission, supra, at 250. Thus, one can commit false swearing only if one knowingly makes a false sworn statement during the course of an official proceeding. The subset of individuals at risk under this statute is greater than that under the perjury statute because materiality is not an element of the crime. However, we conclude that the scope of the statute is substantially and constitutionally curtailed.
We find that the challenged provisions are constitutionally precise and reach no further than is necessary to fulfill their functions. We find the trial court did not abuse its discretion when it denied Franzi’s motion to dismiss based on the constitutionality of the statutes. See State v. Superior Court, 132 Ariz. 479, 647 P.2d 177 (1982).
GRAND JURY PROCEEDINGS
Franzi argues several violations of his rights occurred in the procedure used before the grand jury. We cannot address the merits of Franzi’s claim that there was an insufficient number of grand jurors who *565 voted for the return of the true bill. Franzi has not supplied this court with any facts to support this claim and we presume, therefore, the actions of the grand jury were lawful. See State v. Bojorquez, 111 Ariz. 549, 553, 535 P.2d 6, 10 (1975).

Indictment Before Same Grand Jury

Franzi states the same grand jury that heard the alleged perjurious statements also indicted him; therefore, he was denied a substantial procedural right. He bases his argument on 17 A.R.S. Rules of Criminal Procedure, rule 12.2(a), (persons who are witnesses in an action may not serve as grand jurors) and A.R.S. § 21-211(1) (persons who are witnesses in an action may not serve as jurors). (Franzi explicitly denies reliance on 17 A.R.S. Rules of Criminal Procedure, rule 12.2(d) [persons who are biased in favor of either the state or the defendant may not serve as grand jurors].) We find Franzi’s claim to be without merit.
The grand jury is charged with inquiring into every offense triable in the county. See A.R.S. § 21-407(A). In State v. Watkins, 92 N.M. 470, 473, 590 P.2d 169, 172 (1979), the New Mexico Supreme Court said:
In carrying out the charge and their oath, “[i]t is not expected that in every instance, each grand juror shall be free from all previous knowledge of the cases, or even of the precise circumstances of the cases coming before them for official action.”
(Quoting Territory of New Mexico v. Young, 2 N.M. (Gild.) 93, 37 Pac.St.Repts. 93 (1881)); see also, Tindall v. State, 99 Fla. 1132, 128 So. 494 (1930) (syllabus by the Florida court — when a witness swears falsely before a grand jury, the same grand jury may indict); People v. Rallo, 46 A.D.2d 518, 363 N.Y.S.2d 851 (1975), aff'd 39 N.Y.2d 217, 347 N.E.2d 633, 383 N.Y.S.2d 271 (1976) (the same grand jury that heard the perjury may return indictment for perjury). In Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), the Court said “our constitutional grand jury was intended to substantially operate like its English progenitor.” The Court explained that the English “grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory.” Id.; see also Branzburg v. Hayes, 408 U.S. 665, 701, 92 S.Ct. 2646, 2667, 33 L.Ed.2d 626 (1972) (grand jury investigation may be triggered by “the personal knowledge of the grand jurors.”).
It is a requirement of due process that the grand jury be fair and impartial. See Crimmins v. Superior Court, 137 Ariz. 39, 41, 668 P.2d 882, 884 (1983). The fact the grand jury heard the allegedly perjurious statements, without more, does not establish that the jurors were unable to base their decisions to indict on the evidence. See State v. Watkins, supra, 92 N.M. at 472, 590 P.2d at 171.
In Arizona, indictments, are based on probable cause. A.R.S. § 21-413. Franzi does not urge that probable cause to indict is not present. We hold that rule 12.2(a) is not violated simply because the same grand jury that heard the perjurious statements indicted the defendant. We find that the trial court’s ruling on Franzi’s motion to dismiss on the above ground was not an abuse of discretion. See State v. Superior Court, 132 Ariz. 479, 647 P.2d 177 (1982).

Hearsay Evidence

Franzi next argues that the grand jury based its decision on hearsay evidence. This claim is without merit because hearsay evidence in a grand jury proceeding is not objectionable. State v. Baumann, 125 Ariz. 404, 408, 610 P.2d 38, 42 (1980).

Exculpatory Evidence

Franzi argues that the state violated his rights by refusing to present to the grand jury all exculpatory evidence. In Arizona, one of the functions of the grand jury is to determine whether probable cause exists to believe that a crime has been committed and whether probable cause exists to believe that the indicted individual committed the crime. A.R.S. § 21-413; 17 A.R.S. Rules of Criminal Pro *566 cedure, rule 12.1(d)(4). The prosecutor is not required to present all exculpatory evidence to the grand jury. See State v. Coconino County Superior Court, 139 Ariz. 422, 425, 678 P.2d 1386, 1390 (1984); cf. A.R.S. § 21-412 (grand jury may request exculpatory evidence). Requiring the grand jury to consider all exculpatory evidence “would put grand juries in the business of holding minitrials.” Baumann, supra, 125 Ariz. at 408-09, 610 P.2d at 42-43 (citations omitted). We find no abuse of discretion. See State v. Superior Court, 132 Ariz. 479, 647 P.2d 177 (1982).
SUFFICIENCY OF THE INDICTMENT
Franzi argues that the indictment is deficient because it does not allege that the grand jury had jurisdiction to pursue the investigation that led to Franzi’s indictment. Rules of Criminal Procedure, rule 13.2(a) provides:
In General. The indictment or information shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged.
Thus, one function of the indictment is to give the defendant notice of the crime charged so that the defendant may prepare a defense. See State v. Self, 135 Ariz. 374, 380, 661 P.2d 224, 230 (App.1983).
We find the indictment on the perjury counts is sufficient. Jurisdiction over the subject of the investigation is not a separate element of perjury; it is encompassed in the element of materiality. The state did allege that the alleged perjurious statements were material, and this put Franzi on notice that the state would seek to prove the propriety of its inquiry. Moreover, Franzi has not claimed he did not have notice of the charges against him. See id. (“All parties were aware of the basis for the indictment, and we find that its form was sufficient.”)
Franzi challenges the false swearing counts in the indictment on the same grounds. Neither jurisdiction over the subject matter of the investigation nor materiality of the statement is an element of false swearing; therefore, the state need not allege either in the indictment. As noted above, the time to challenge the propriety of the question is before the false statement is made.
We also note that the indictment mirrors the language of the statute. The indictment reads in part: “On or about February 16, 1983 EMIL FRANZI knowingly made a statement while under oath or affirmation which was false and which he believed was false.” The statute provides: “A person commits false swearing by making a false sworn statement, believing it to be false.” A.R.S. § 13-2703(A). An indictment in the language of the statute provides notice to the defendant. See State v. Miller, 100 Ariz. 288, 297, 413 P.2d 757, 763 (1966).
Again, we note that Franzi does not contend that he did not have notice of the crimes charged. See State v. Self, supra. We find that the trial court did not abuse its discretion in its ruling on Franzi’s motion to dismiss. See State v. Superior Court, 132 Ariz. 479, 647 P.2d 177 (1982).
DISCOVERY
Franzi filed a motion for discovery in the trial court requesting several items. One request was for the entire transcript of the 51st grand jury. (The 51st grand jury’s investigation began in August of 1982 and continued until at least March of 1983.) The trial court ruled that Franzi was entitled to all relevant testimony, but that the testimony of the congressional candidate would be reviewed by the court. Franzi appealed and the court of appeals said in its order that Franzi “has a right to the grand jury transcripts.” The state sought review of that order in this court.
A.R.S. § 21-411(A) provides in pertinent part that “[t]he reporter’s notes containing the proceedings from which an indictment is returned shall be transcribed and ... made available to the prosecuting officer and the defendant.” (Emphasis added). 17 A.R.S. Arizona Rules of Criminal Procedure, rule 12.8(c), contains the same language (“the proceedings from *567 which an indictment is returned ... shall be made available to the prosecution and defendant only.”). Our court of appeals construed these provisions to require “that everything that transpires before the grand jury, except the deliberations of the jurors, is to be transcribed.” State v. Superior Court, 26 Ariz.App. 482, 484, 549 P.2d 577, 579 (1976). Therefore, all testimony of the proceedings from which the indictment is returned is to be turned over to the defendant. On a showing of extraordinary circumstances by the prosecutor, portions of the transcript may be withheld from the defendant. A.R.S. § 21-411(A). No such showing was attempted. Thus, Franzi is entitled to all transcripts of the proceeding from which his indictment was returned.
We must now determine whether the proceeding out of which the indictment was returned requires the production of all testimony taken by the 51st grand jury (investigation numbers 51 G.J. 43 and 51 G.J. 263) or only a part of the testimony.
The record shows that the 51st grand jury began its term by investigating a contract awarded by the Pima County Board of Supervisors to an Arizona company. This investigation was numbered 51 G.J. 43. While investigating the contract, evidence was uncovered which led the grand jury to investigate the congressional campaign of a member of the Board of Supervisors. This investigation was numbered 51 G.J. 263.
Franzi was questioned during investigation number 51 G.J. 263. The alleged false statements were made under this number. However, apparently some of the statements with which Franzi’s are inconsistent were made under 51 G.J. 43:
The record shows that it was from investigation 51 G.J. 263 that his indictment was returned. Franzi is entitled to the transcripts of that proceeding. We read the trial judge’s order as requiring the production of these transcripts and we find that the trial court did not abuse its discretion.
As noted above, because the first investigation led directly to the second, there will be testimony relevant to 51 G.J. 263 contained in the transcripts of 51 G.J. 43. We read the trial court’s order as requiring the production of all transcripts contained in 51 G.J. 43 that are relevant to 51 G.J. 263, and we find no abuse of discretion. (We find no difficulty with the court’s perusal of the congressional candidate’s testimony before it is produced.)
There being no abuse of discretion, see State v. Superior Court, 132 Ariz. 479, 647 P.2d 177 (1982), the rulings of the trial court are affirmed. To the extent the order of the court of appeals is inconsistent with this opinion, that order is vacated.
Remanded to the trial court for proceedings not inconsistent with this opinion.
HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ„ concur.

. The only language change the legislature made from this portion of the proposed statute to the one enacted was to replace the words “if he or she makes” with "by making.” Compare Arizona Criminal Code Commission, Arizona Revised Criminal Code, § 2701 (1975) with A.R.S. § 13-2702(A).

. A.R.S. § 13-561 was replaced by A.R.S. § 13-2702.